JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by George Brown of his convictions for possession of drugs and receiving stolen property following a jury trial before Judge Timothy J. McGinty. He claims the judge failed to suppress evidence obtained through an illegal search and, alternatively, the State failed to prove the value of the stolen property exceeded $500, so his conviction on that charge should be reduced from a fifth degree felony to a first degree misdemeanor. We affirm the convictions but remand for resentencing.
 {¶ 2} At about 9:00 p.m. on August 26, 2001, Cleveland firefighters, returning from a run, observed then 37-year-old Brown walking past their station at East 66th Street and Chester Avenue carrying a tool box and a drill. They suspected that he had stolen the tools from the station and confronted him, at which point he abandoned the tools and ran away. They chased him, captured him, and held him until police arrived.
 {¶ 3} Cleveland Patrol Officer Stanley Grabowski took control of Brown from the fire fighters, conducted a pat-down search, discovered a ceramic pipe in Brown's pocket, and placed him under arrest on drug charges. The fire fighters subsequently determined that the tools did not belong to anyone at the station, and reported this to Grabowski, who confiscated the tools, inventoried them, and placed them in a police evidence room. It was later discovered that the tools had been stolen from MPC Plating, a business located on East 63rd Street, and were returned prior to Brown's trial.
 {¶ 4} Laboratory results revealed cocaine residue on the pipe, and Brown was indicted for possession of less than five grams of cocaine.[1]
A separate indictment charged him with receiving stolen property valued between $500 and $5,000,[2] and the cases were consolidated for trial.
 {¶ 5} Brown moved to suppress the evidence against him, claiming the pipe was discovered as a result of an unlawful search and that the remaining evidence was tainted by the illegal search and arrest. Officer Grabowski testified that he believed the hard cylindrical object in Brown's pocket could have been a weapon, such as the handle of a knife, and the judge denied the motion.
 {¶ 6} At trial the officer testified that he inventoried the tools, and identified the drill and tool box presented as the ones he took from Brown, but stated that the tool box contained more tools, including another drill, than those in the box presented at trial. Morgan Sayle, an employee of MPC Plating, testified that when the police returned the tools to him there were three drills in the tool box and they were used in the company's business in the interim until trial. For trial, however, he was unable to return all the tools that had been in the box as an exhibit and, therefore, those identified at trial did not represent all the tools stolen from his company and returned to him by the police.
 {¶ 7} Sayle claimed that the tools returned to him by police were valued at over $600, but on cross-examination he admitted that the tools presented at trial were worth between $300 to $400. Based on this testimony and the exhibits, Brown moved for acquittal on the receiving stolen property charge under Crim.R. 29, which the judge denied. He did agree, however, to instruct the jury on the first degree misdemeanor offense of receiving stolen property in an amount less than $500.
 {¶ 8} The jury found Brown guilty of both drug possession and receiving stolen property, and found the value of the property over $500. He was sentenced to eleven months in prison on the drug possession charge, consecutive to a twelve-month sentence for receiving stolen property, and the judge, purporting to impose post-release control sanctions on both charges, stated:
 {¶ 9} "Post release control is a part of this prison sentence for a two year period allowed for the above felony(s) under R.C. 2967.28 with drug/alcohol monitoring."
 {¶ 10} The first of Brown's two assignments of error states:
 {¶ 11} "I. The Trial Court Erred in Denying Appellant's Motion to Suppress Evidence."
 {¶ 12} When reviewing a warrantless search, this Court will reverse a judge's findings of historical fact only upon clear error, but makes a de novo determination when applying those facts to the law; whether a search was reasonable upon particular facts is a legal question.[3] The State has the burden to prove the intrusion reasonable.[4]
 {¶ 13} Brown argues that the police lacked sufficient justification to subject him to a protective weapons search pursuant toTerry v. Ohio.[5] Under Terry, police may make investigative stops of individuals suspected of criminal activity on a showing of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[6] If the Terry stop is justified, a court must still determine whether a protective weapons search is justified by a reasonable suspicion that the person being detained is armed.[7]
 {¶ 14} A reasonable suspicion of criminal activity usually justifies a protective weapons search because one can objectively suspect that those involved in such activity could be armed.[8] Although individuals suspected of minor offenses might not trigger this objectively reasonable suspicion,[9] Brown was reasonably suspected of committing serious offenses at the time he was stopped. Furthermore, when stopped and questioned about the tools he was carrying, he abandoned them and ran away. Therefore, even if the fire fighters had told the police that he had not stolen the tools from them prior to his search and arrest, he would still be reasonably suspected of criminal behavior, which at that point would include not only a theft offense, but other offenses such as burglary or breaking and entering.
 {¶ 15} Officer Grabowski reasonably suspected Brown of serious criminal behavior, and a protective weapons search was justified. When he felt a hard cylindrical object in Brown's pocket and reasonably suspected that it could be a weapon, such as the handle of a knife, he was justified in removing the object to ensure his safety. The first assignment is overruled.
 {¶ 16} The second assignment states:
 {¶ 17} "II. Evidence Presented Was Insufficient to Support The Receiving Stolen Property Conviction."
 {¶ 18} We address the sufficiency of the evidence to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[10] A sufficiency challenge presents a question of law and does not allow the reviewing court to weigh the evidence.[11]
 {¶ 19} Brown argues that the State failed to prove the value of the items was over $500 because the trial exhibits contained tools valued at less than $500, although both Grabowski and Sayle testified that the trial exhibits did not contain all the property involved. Grabowski testified that he recalled confiscating at least two drills, and Sayle testified that the property returned by the police included three drills, as well as other items not contained in the exhibits.
 {¶ 20} The failure to keep the property for trial or, failing that, to introduce an inventory list of the property confiscated from Brown at the time of his arrest, is troubling, but we are not convinced that the issue raised here concerns the sufficiency of the evidence. The testimony of Grabowski and Sayle was competent to establish the items taken and their value, even though a conflict arose between their testimony and the items in the trial exhibits. Grabowski and Sayle testified to matters within their personal knowledge, and thus their testimony was competent evidence of the items taken and their value.
 {¶ 21} Although this is not a typical challenge to the chain of custody because Brown did not seek to exclude the physical exhibits, the fact that Grabowski testified to the items he confiscated and Sayle testified to the items the police returned is evidence of the chain of custody, and cases addressing that issue provide some analogy. Those cases hold that once physical evidence is deemed admissible, breaks in the chain of custody go to the weight of the evidence, not its sufficiency.[12] This principle is applicable here, and thus Grabowski's and Sayle's testimony was sufficient evidence of the value of the items found in Brown's possession.
 {¶ 22} Brown has not challenged the weight of the evidence, nor has he presented any argument or authority to persuade us that Grabowski's and Sayle's testimony was incompetent or insufficient to establish the identity and value of the items. While certain arguments might be advanced to claim insufficiency or to establish a defendant's right to the preservation of evidence,[13] those arguments are not simple enough that we can address them as matters of plain error.[14]
On the evidence and argument here, we find sufficient evidence to sustain Brown's conviction. The second assignment of error is overruled.
 {¶ 23} Although Brown has not raised the issue, we can recognize plain error in sentencing even when not raised on appeal.[15] The judge failed to state findings supporting consecutive sentences under R.C.2929.14(E)(4), failed to make findings supporting the imposition of a maximum sentence under R.C. 2929.14(C), and failed to address the factors of R.C. 2929.13(B) relevant to imposing a prison term for a fifth degree felony drug conviction. Moreover, he sought to impose a definite period of post-release control upon Brown and imposed the conditions applicable to his post-release control.
 {¶ 24} Because Brown was convicted of two fifth degree felonies, R.C. 2967.28(C) places the imposition of post-release control under the parole board's discretion; the judge has no authority to impose post-release control. Similarly, the judge has no authority to state the conditions of post-release control, because that authority resides with the parole board and the Adult Parole Authority under rules established by the Department of Rehabilitation and Correction.[16] The judge's authority in this case is limited to informing the defendant that post-release control sanctions can be imposed after he has served his prison term, thus enabling the parole board to exercise its discretion.[17]
 {¶ 25} The judgments of conviction are affirmed, the sentences in both cases are vacated and remanded for resentencing.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded for re-sentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., AND DIANE KARPINSKI, J., CONUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] R.C. 2925.11(C)(4)(a).
[2] R.C. 2913.51(B).
[3] Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 134 L.Ed.2d 911; State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 7.
[4] Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
[5] (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[6] Id. at 21.
[7] Id. at 24; State v. Evans, 67 Ohio St.3d 405, 408-409,1993-Ohio-186, 618 N.E.2d 162.
[8] Id. at 413.
[9] State v. Clark (2000), 139 Ohio App.3d 183, 189, 743 N.E.2d 451; see, also, State v. Lozada, 92 Ohio St.3d 74, 2001-Ohio-149,748 N.E.2d 520, paragraphs one and two of the syllabus (traffic stop does not justify weapons search without other circumstances indicating danger).
[10] (Emphasis sic.) State v. Stallings, 89 Ohio St.3d 280, 289,2000-Ohio-164, 731 N.E.2d 159, quoting Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
[11] State v. Martin (1983), 20 Ohio App. 172, 175, 20 OBR 415,485 N.E.2d 717.
[12] State v. Wilkins (1980), 64 Ohio St.2d 382, 389, 18 O.O.3d 528,415 N.E.2d 303.
[13] See, e.g., R.C. 737.29, 737.31 (requiring police to inventory confiscated property, provide a list to the person from whom it was taken, and retain property pending discharge or conviction); R.C.2933.43(B)(2) (requiring similar inventory and retention of seized property); see, also, R.C. 2933.241, 2933.27 (concerning inventory and retention of property seized pursuant to warrant).
[14] State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240.
[15] State v. Payton (Dec. 14, 2000), Cuyahoga App. No. 76967; Statev. Slagter (Oct. 26, 2000), Cuyahoga App. No. 76459.
[16] R.C. 2967.28(D), (E).
[17] See State v. Morrissey (Dec. 18, 2000), Cuyahoga App. No. 77179;State v. Newman, Cuyahoga App. No. 80034, 2002-Ohio-328.